**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Kathy Ann Kennedy, Individually and as Personal Representative of the Estate of Larry O. Kennedy, Deceased, ) ) ) ) ) ) | |
| Plaintiff, ) | Civil Action No.: 2:04-21924-CWH |
| vs. ) ) | |
| Gordon R. England, Secretary, Department of the Navy ) ) ) | **ORDER** |
| Defendant. ) ) | |

On August 18, 2004, the plaintiff commenced this employment discrimination action pursuant to the Rehabilitation Act, 29 U.S.C. §791 *et. seq*. On September 2, 2005, the defendant moved for summary judgment. On March 13, 2006, Magistrate Judge Robert S. Carr issued a report analyzing the issues and recommending that the Court grant the defendant's motion for summary judgment. On March 30, 2006, the plaintiff objected to the report and recommendation.

This matter is now before the Court for disposition. This Court is charged with making a *de novo* determination of any portions of the magistrate judge's recommendation to which specific objection is made. 28 U.S.C. § 636(b). The Court evaluates the evidence without granting any deference to the magistrate judge's findings and conclusions. Matthews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F.Supp. 408, 410 (D.S.C. 1993). The final decision is made by the Court based upon the actual record, not merely the magistrate judge's reported findings. Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985). The Court may

accept, reject, or modify, in whole or in part, the report and recommendation, or recommit the matter with instructions.  28 U.S.C. §636(b)(1).  After a full review of the record and pertinent case law, the Court adopts the report and recommendation and grants summary judgment to the defendant.

I.  BACKGROUND

On October 1, 1997, Larry Kennedy ("Kennedy") became the Department Head of the Safety and Occupational Health Department at the Charleston Naval Weapons Station and remained in that capacity from 1997 to June 2001.  In May 2000, Kennedy was diagnosed with lung cancer, and he informed his Commanding Officer, Captain Cook ("Cook"), of his condition.  In July 2000, Captain Crossley ("Crossley") replaced Cook, and Kennedy informed Crossley of his condition.  From May 2000 to May 2001, Kennedy used over 400 hours of leave for medical treatment related to his cancer.  Kennedy's superiors requested written detail concerning his condition so that they could better determine the best course of action for him and for the base.  Kennedy refused to furnish any information.

Kennedy's subordinate supervisors complained to Crossley that Kennedy had become so difficult to work for that they planned to quit.  The subordinate supervisors stated that Kennedy: (1) spent hours in his office with the door shut, making himself unavailable to the staff; (2) would often wrap himself up in a blanket in his office and in the conference room; (3) was often argumentative, verbally abusive, vindictive, and hostile to them; (4) fell asleep during his own staff meetings; and (5) was unable to maintain a conversation and was often unresponsive. The subordinate supervisors informed Crossley that they feared his forthcoming evaluations of their performances.

Crossley spoke with Kennedy about the staff's concerns. Kennedy said that the staff were all liars and were out to get him. Crossley concluded that Kennedy was unable to conduct balanced, unbiased evaluations of the staff's performance. Crossley also noted that occasionally Kennedy failed to come to work without notifying anyone in advance. In 2000, Kennedy took 316 hours of annual leave and 265 hours of sick leave. In 2001, Kennedy took 120 hours of annual leave and 320 hours of sick leave.

Crossley states that he concluded that the Head of the Safety and Occupational Health Department needed to be present in the department more than Kennedy had been. Therefore, on June 1, 2001, Kennedy was assigned to Special Unclassified Duties, a non-supervisory position without a work description. Kennedy received the same pay and grade level. However, he no longer had his own office, and the building in which he was located was not as modern. The plaintiff alleges that Kennedy was removed from e-mail and distribution lists that he was on when he was the Head of the Safety and Occupational Health Department. Kennedy was informed that the assignment was temporary and not to last past September 28, 2001. In 2001, Kennedy took 120 hours of annual leave and 320 hours of sick leave. In 2002, Kennedy took 470 hours of sick leave. Kennedy remained in this new position until October 2002. Kennedy's superiors requested information about his lung cancer, prognosis, and treatment plan, but he did not provide information beyond a handwritten doctor's note stating, "Mr. Kennedy will be out from work due to lung cancer/chemotherapy."

On June 15, 2001, Kennedy filed EEO No. 1 Intake Form, a formal charge of discrimination against the agency. In his charge, Kennedy claimed discrimination based on his physical disability and reprisal. On June 18, 2001, Kennedy was requested to turn in Safety

Department supplies. The complaint alleges that Kennedy was requested to turn in all materials including paper clips and other small office supplies. The defendant alleges that Kennedy was only requested to turn in a laptop and a digital camera belonging to the department. Kennedy was permitted to keep a government car, which was not necessary in his new position. There is no evidence that Kennedy complained to his superiors about his new position.

In December 2001, Kennedy was notified that the cancer had metastasized into his liver. In 2002, he took 470 hours of sick leave and received disability retirement. On August 30, 2002, Kennedy filed a formal EEO complaint. In 2003, Kennedy died.

II. SUMMARY JUDGMENT STANDARD

When a party has moved for summary judgment, the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). An issue of such material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving part. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

III. OBJECTIONS

Magistrate Judge Carr recommended that this Court grant the defendant's motion for summary judgment concluding that Kennedy was not disabled and that Kennedy suffered no adverse employment activity. The plaintiff makes the following objections: (1) Kennedy was disabled *per se* because of his lung cancer; (2) Kennedy suffered adverse employment activity because his new position entailed menial, meaningless tasks, which caused him humiliation; and (3) Kennedy's work environment was hostile.

A. *PER SE* DISABLEMENT

The plaintiff claims that Kennedy was disabled *per se* because of his lung cancer. The cases that the plaintiff cites do not support this proposition.[1] The Rehabilitation Act requires a plaintiff to show that he is disabled and that the defendant discriminated against him "solely by reason of" his disability. Id. A disability is "(1) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (2) a record of such impairment; or (3) being regarded as having such impairment." 42 U.S.C. §12102(2). The plaintiff alleges that the defendant regarded Kennedy as having an impairment that substantially limited the major life activity of working. The plaintiff must show more than mere preclusion from a specific job; the plaintiff must show that the defendant regarded Kennedy as unable to

---

[1] In a case brought pursuant to the Fair Housing Act, the Fourth Circuit Court of Appeals stated in dicta "[j]ust like any other person with a disability, such as cancer or tuberculosis, former drug-dependent persons do not pose a threat to a dwelling or its inhabitants on the basis of status." US v. S. Mgmt. Corp., 955 F.2d 914, 921 (1992). The Supreme Court held that a dentist could not refuse to treat a person with HIV solely on the basis of the patient's HIV infection. Bragdon v. Abbott, 524 U.S. 624 (1998). Neither the Supreme Court nor the Fourth Circuit Court of Appeals held that a person with cancer is *per se* disabled as a matter of law. Therefore, the plaintiff must prove that Kennedy was disabled in order to recover under the Rehabilitation Act.

work a broad class or range of jobs.  Murphy v. United Parcel Serv., 527 U.S. 516, 523 (1999); Sutton v. United Airlines, 527 U.S. 471, 489 (1999).   The Supreme Court has held that the defendant must believe that the plaintiff's impairment is permanent or long term.  Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 198 (2002).

The plaintiff claims that the defendant regarded Kennedy as disabled and therefore detailed him to the new position.  However, the undisputed evidence shows that the defendant did not regard Kennedy as disabled and that the defendant did not believe that Kennedy was precluded from a broad range or class of jobs.  In his deposition, Crossley stated that the tasks to which Kennedy was assigned were important and required his technical expertise.  Therefore, the defendant did not believe that Kennedy was substantially limited in the major life activity of working.

The undisputed evidence also shows that the defendant did not regard Kennedy's condition as permanent or long term.  Kennedy's new position was always assigned on a temporary basis.  In his deposition, Captain Cook stated that he wanted to temporarily assign Kennedy so that he could recover and then put him back in his supervisory position.  The defendant did not regard Kennedy was disabled.

The plaintiff has not shown that Kennedy was assigned to a new position "solely" because of his disability.  29 U.S.C. §794(a); Soledad v. U.S. Dep't of Treasury, 304 F.3d 500, 505 (5th Cir. 2002).  The undisputed evidence shows that Kennedy's subordinates informed Crossley that they could no longer work for Kennedy and planned to quit because they felt that Kennedy verbally abused them.  In addition, Crossley stated that he felt that the head of the Safety and Occupational Health Department needed to be present at work and available to the

staff.  Kennedy had taken a lot of time off and made himself unavailable to the staff when he was in the office.  After Kennedy underwent four counseling sessions with Crossley and two with Cook, Crossley decided that Kennedy's change of position was necessary for the well-being of the Safety and Occupational Health Department as well as the naval base.  The plaintiff has not shown that the defendant changed Kennedy's position solely because of his cancer.

Based on the record, there is no genuine issue of material fact.  The undisputed evidence does not show that Kennedy was disabled or that the defendant regarded him as disabled.  Nor has the plaintiff shown that his change of position was due to his cancer.

### B.  ADVERSE EMPLOYMENT ACTIVITY

The plaintiff claims that Kennedy suffered adverse employment activity because his new position entailed menial, meaningless tasks.  In addition, Kennedy was removed from e-mail and distribution lists.  The plaintiff claims that these acts caused Kennedy to be humiliated.  Proving that an employee is regarded as disabled in the major life activity of working . . . is embedded almost entirely in the employer's subjective state of mind.  Ross v. Campbell Soup Co., 237 F.3d 701, 709 (6th Cir 2001).  In his deposition, Crossley stated that the tasks to which Kennedy was assigned were important and required his technical expertise.

An adverse act is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  The plaintiff cannot show that the defendant's acts were an adverse employment action.  None of these actions changed Kennedy's status, pay, benefits, or grade level.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); Boone v. Goldin, 178 F.3d 253, 256 (4th Cir.

1999).

Once the plaintiff makes a *prima facie* showing of adverse employment action, the defendant must articulate a legitimate nondiscriminatory reason for its action; the plaintiff must then show that the defendant's reason is a pretext for discrimination. Ross v. Comm'n Satellite Corp., 759 F.2d 355, 375-76 (4th Cir. 1985). The undisputed evidence shows that Kennedy's subordinates informed Crossley that they could no longer work for Kennedy and planned to quit because they felt that Kennedy verbally abused them. In addition, Crossley stated that he felt that the head of the Safety and Occupational Health Department needed to be present and available to the staff. Crossley decided that Kennedy's change of position was necessary for the well-being of the Safety and Occupational Health Department as well as the naval base. The plaintiff has not shown that these reasons were a pretext for discrimination.

### C. HOSTILE WORK ENVIRONMENT

Where the plaintiff's claim involves unfulfilled threats or promises of job-related benefits, the claim is categorized as a hostile work environment claim. Ellerth, 118 S. Ct. at 2270. The plaintiff raises a hostile work environment for the first time in her objections to the report and recommendation. The plaintiff has stated that Kennedy felt humiliated, embarrassed, and degraded and suffered extreme mental anguish and distress, which hastened his demise.

> To prevail on a hostile work environment claim under the Rehabilitation Act, [the plaintiff] must prove that [Kennedy]: (1) is a qualified individual with a disability; (2) was subject to unwelcome harassment; (3) the harassment was based on . . . disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis for imputing liability to the employer. Fox v. GMC, 247 F.3d 169, 177 (4th Cir.2001). [The plaintiff] must demonstrate that [the] employer's conduct was objectively hostile, such that a reasonable person would so perceive it as such. Id. at 178. Factors to be considered in analyzing the objective component include the frequency and severity of the discriminatory conduct, whether it is physically threatening or

>   humiliating rather than being a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Id. at 178.

Edmonson v. Potter, 118 Fed.Appx. 726, 730 ( 4th Cir. 2004). For the reasons stated above, the plaintiff has not shown that Kennedy was disabled. In addition, there is no evidence here that could support a reasonable finding that Kennedy suffered any alleged harassment or that the defendant's acts were based on Kennedy's alleged disability, or that it was severe or pervasive such that it created an abusive work environment. Id.; *see also* Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Kennedy was often absent from work and unavailable to staff when he was at work. The evidence shows that Crossley decided that Kennedy's change of position was necessary for the well-being of the Safety and Occupational Health Department as well as the naval base.

No genuine issue of material fact exists in this case. Therefore, the defendant is entitled to summary judgment with respect to the plaintiff's claims for discrimination, retaliation, and hostile work environment.

**AND IT IS SO ORDERED.**

_____
**C. WESTON HOUCK
UNITED STATES DISTRICT JUDGE**

April 25, 2006
Charleston, South Carolina